**ALEXANDRE OF LONDON, WASHING-TON, D. C., CORPORATION,**
Plaintiff,

v.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,**
Defendant.

Civ. A. No. 2956-57.

United States District Court
District of Columbia.

May 19, 1960.

James H. Heller, Washington, D. C., for plaintiff.

Frank J. Martell, Washington, D. C., for defendant.

LEONARD P. WALSH, District Judge.

The Court having heard the above case without a jury, filed its memorandum opinion, as amended, on March 31, 1960. The defendant, through counsel, on April 15, 1960, filed a motion for findings of fact and conclusions of law, and for a new trial. Oral argument on the motion was heard on May 13, 1960.

The comprehensive policy in the case here involved provided for recovery under Agreement I thereof for losses due to the dishonesty of unidentifiable employees, and under Agreement VII thereof for losses due to burglary. The plaintiff proceeded by claiming recovery under one or the other of these Agreements on the basis of alternative theories of proof. However, to recover under the provisions of Agreement I, the possibility of loss by burglary would have had to be negated. But, since there was evidence of burglary which the Court could consider, the plaintiff did not attempt to negate the possibility of burglary, but affirmatively advanced it as an alternative basis of proof of loss under Agreement VII.

Under the plaintiff's theory, as it is believed to be relied on, if the Court did not find that there was sufficient evidence of loss by means of burglary, then the Court itself would have excluded the only other explanation of loss needed to prove the claim under Agreement I.

The Court is satisfied that the plaintiff employed its alternative theories correctly in this case under the facts as they existed.

After reviewing the evidence, the Court granted recovery under Agreement VII for losses due to burglary. However, it was also found that *but for* the evi-

dence of burglary sufficient to support recovery under the terms of the policy, the plaintiff would have sufficiently proved its case so as to permit recovery under Agreement I for losses due to dishonesty of unidentifiable employees. Therefore, the Court's ultimate finding permitted plaintiff's recovery under the burglary provision of the policy, as seems clear from a reading of the Court's opinion. The conclusions reached by the Court in its opinion rested upon a showing by the plaintiff of a preponderance of the evidence supporting its contentions.

The Court finds that the findings and judgment in the case were in accordance with and consistent with the evidence and the facts as brought out at the trial, and that the findings and judgment are in accordance with the law.

Accordingly, the motion for new trial is denied.

While it is considered that the opinion filed by the Court on March 31, 1960, as amended, sufficiently sets forth findings of fact and conclusions of law so as to meet the requirements of Rule 52 (a) and (b), of the Federal Rules of Civil Procedure, 28 U.S.C.A., upon defendant's motion, the Court makes the following findings of fact and conclusions of law:

### Findings of Fact

1. This is a suit to recover as an insured loss the invoice value of certain garments allegedly taken from plaintiff's Washington, D. C. retail clothing store sometime early in 1957. The policy, No. CDD28650B, was a comprehensive dishonesty, disappearance, and destruction policy, and the pertinent provisions thereof provided for recovery, under Insurance Agreement I, for loss through dishonesty of unidentifiable employees, and, under Insurance Agreement VII, for loss due to burglary.

Agreement VII also provided that the premises where the merchandize loss occurred were to be equipped with an American District Telegraph ("ADT") Burglar Alarm System.

By endorsement, dated March 7, 1956, the terms "employee" or "employees" under Insuring Agreement I were extended to include plaintiff's president, vice-president, treasurer, and secretary.

2. Sometime between January 26 and March 10, 1957, plaintiff suffered a loss from its store consisting of 44 garments having a total invoice cost of $3,072.43. On the first of those dates plaintiff's semi-annual store inventory was begun, and during that inventory the garments were found to be in the second floor salesroom of the store. On the second date a special stock audit, prompted by the discovery that certain suits were not found in the salesroom, was completed and the loss was discovered.

3. Subsequently plaintiff submitted to defendant a claim in the amount of $3,224.43 for indemnification of the loss. The claim was rejected and this action followed.

4. Plaintiff maintained a strict inventory and stock control system under which each garment was given a separate stock number which was recorded both in the inventory stock books and on a tag attached to the garment. Each return, sale, or other disposition of the garment as a result of legitimate store operations was recorded opposite the stock number in the inventory books.

5. As a result of this inventory control system plaintiff was able to prove its loss in great detail, including the item numbers, size, and invoice cost of each missing garment, and it was also able to negate the effect of imponderable factors such as accounting errors. It was also able to revise the claim which had been submitted to defendant prior to suit downward, to the present figure of $3,072.43. This downward revision was made as a result of articles found to be in stock, sold, or shipped to its Virginia retail store. The last figure represents the actual loss suffered by plaintiff, valued at invoice cost to the plaintiff.

6. The burglar alarm system in plaintiff's store registered four night alarms at the ADT central station dur-

ing the period when the loss occurred, i. e., on February 19, February 20, February 26, and February 27, 1957. This was more than the number of alarms reported at the store in the following eight months. While it was suggested that some of these alarms might be explainable by faulty electric circuits and other causes, no specific explanation was given by ADT for each of the four alarms at the store during the time here in question.

7. On one of these four nights a burglary of the store occurred through its roof trapdoor and the inventory loss of $3,072.43 was caused by the burglary.

The entry or exit of the burglar(s) was evidenced by visible marks made by tools or electricity, showing tampering with the ADT alarm wire for the roof trapdoor and the fastening hooks of the door. The wire had been spliced, there was slack in it, and the hooks were hanging loose, permitting the trapdoor to be opened wide enough for ingress and egress of a man's body without setting off the alarm.

8. Except for the evidence that the loss occurred by reason of burglary, the remaining evidence of record shows that the loss must have occurred as a result of the dishonesty of unidentifiable employees of plaintiff, for the evidence clearly and convincingly excluded all other explanations of the loss. The nature of the merchandise lost, the physical layout of plaintiff's store, the surveillance of customer exits maintained by plaintiff, the size of the loss and short time in which it occurred, together with the careful and detailed inventory control maintained by plaintiff, ruled out the possibilities that the loss was due to customer theft, spoilage, breakage, sales, or other dispositions of the garments in the course of legitimate store operations, accounting errors, or other imponderable factors. Accordingly, apart from the evidence of burglary, the Court finds that the loss must necessarily have been attributable to the dishonesty of one or more unidentifiable employees of plaintiff.

## Conclusions of Law

1. The requirement in defendant's insurance policy insuring plaintiff against burglary that such burglary be evidenced by "visible marks" made by tools or electricity at the exterior or interior of the premises at the place of entry is satisfied by evidence that a burglar alarm wire attached to the roof trapdoor in plaintiff's store had been spliced, that there was slack in the wire, and that the hooks to fasten the trapdoor had been unfastened, thus permitting the trapdoor to be opened far enough to permit ingress and egress of a man's body without setting off the burglar alarm.

2. Such evidence, coupled with the fact that during a specific six-week period, when plaintiff suffered a large merchandise loss from its store, an abnormally large number of unexplained night-time burglar alarms was received from the store, satisfies the requirements for proof of loss due to burglary within the meaning and coverage of the policy.

3. Plaintiff established by a preponderance of the evidence that between January 26 and March 10, 1957, it suffered a merchandise loss of 44 garments having a total invoice cost of $3,072.43, as a result of burglary within the meaning and coverage of the plaintiff's insurance policy with defendant.

4. The provision in defendant's policy insuring plaintiff against any merchandise loss which is "conclusively" proven to have been caused by the fraud or dishonesty of plaintiff's employees does not require proof beyond the possibility of contradiction, but is satisfied by evidence reasonably establishing such a loss. Thus, clear, satisfactory, and convincing evidence, which, by a process of elimination, positively excludes all possible explanations of the loss other than employee dishonesty meets the policy requirement in a case where the actual employee or employees cannot be ascertained.

5. Inasmuch as defendant's policy insured plaintiff against loss due to both burglary *and* employee dishonesty, plaintiff is entitled to recover under the policy where the evidence conclusively establishes that if the loss did not occur by reason of burglary, then it must have been due to employee dishonesty, as those terms are used in the policy, i. e., if, apart from the proof of burglary, the evidence conclusively establishes that the loss must necessarily have occurred by reason of employee dishonesty.

6. Apart from the evidence of burglary, plaintiff conclusively proved that the merchandise loss which it suffered between January 26 and March 10, 1957, must otherwise have occurred by reason of employee dishonesty within the meaning and coverage of plaintiff's insurance policy with defendant.

7. Plaintiff is entitled to recover from defendant the sum of $3,072.43, plus the costs of this action.